IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| CINTAS CORPORATION and CINTAS CORPORATION NO. 2, both d/b/a CINTAS FIRE PROTECTION, | ) ) ) ) | C O M P L A I N T |
| Defendants. | ) ) ) ) ) ) | JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the bases of sex, race, and retaliation, and to provide appropriate relief to Armand Upchurch, Claude Ashe, and a class of similarly situated male and African American employees who have been employed in and around Defendants' "Dry Cell" unit of the Cintas Fire Protection Facility in Warminster, Pennsylvania. As alleged with greater particularity in paragraph 13 below, Upchurch, Ashe, and other similarly situated males and African Americans have been subjected to a continuing sexually and racially hostile work environment. In addition, Upchurch and Ashe have been subjected to intimidation, threats, discipline, and discharge in retaliation for complaining about the discriminatory work environment.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII").

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Cintas Corporation has continuously been a Washington State corporation doing business in the State of Pennsylvania and the City of Warminster, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Cintas Corporation has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant Cintas Corporation No. 2 has continuously been a Nevada corporation doing business in the State of Pennsylvania and the City of Warminster, and has continuously had at least 15 employees.

7. Defendant Cintas Corporation No. 2 is the wholly-owned principal operating subsidiary of Defendant Cintas Corporation and owner of the "Cintas Fire Protection" trade

name. Cintas Corporation and Cintas Corporation No. 2 are hereafter referred to collectively as "Defendants Cintas."

8. At all relevant times, Defendant Cintas Corporation No. 2 has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

9. More than thirty days prior to the institution of this lawsuit, Claude Ashe and Armand Upchurch filed charges with the Commission alleging violations of Title VII by Defendants Cintas. All conditions precedent to the institution of this lawsuit have been fulfilled.

10. Ashe, Upchurch, and a class of similarly situated individuals worked in or with the "Dry Cell" unit of Defendants' Cintas Warminster plant. The Dry Cell unit's function was largely to refill and refurbish customers' portable fire extinguishers. Workers assigned to the Dry Cell worked in an assembly-line fashion as a team in close proximity to one another during the typical work day.

11. At all times relevant to the action, Defendants Cintas placed employees Ashe, Upchurch, and other similarly situated class members under the daily supervision, monitoring, tutelage, and/or other real and apparent authority of Jack Sablich, a white male employee with over thirty-five years' work experience at the Warminster branch of Cintas Fire Protection and its predecessor in assets.

12. On a daily basis, Sablich taught and assigned Ashe, Upchurch, and the class members their work tasks; monitored their performance; kept their timesheets; reported disciplinary infractions to senior supervisors; distributed paychecks; had substantial if not sole input into class members' periodic performance evaluations; and claimed to have authority to

alter the terms and conditions of class members' work, for example, with regard to pay rate, assignment, transfers to other jobs at the Warminster plant, overtime, and retention.

13. Since at least January 2007, Defendants Cintas have engaged in unlawful employment practices at their Cintas Fire Protection facility in Warminster, Pennsylvania, in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2, and Section 704 of Title VII, 42 U. S. C. § 2000e-3. Such practices include the following:

a. subjecting Ashe, Upchurch, and a class of similarly situated males working within and around the Dry Cell to a sexually hostile and offensive work environment by condoning the sexually harassing behavior of Sablich. Incidents of harassment committed by Sablich include, but are not limited to the following: on a daily and basis, Sablich referred in private and public to the class members as "sparkles," "delicious," and "boner boy;" on a daily basis, Sablich slapped class members' buttocks upon meeting and leaving their workspace; Sablich frequently fondled Ashe's and Church's buttocks; on a frequent if not daily basis, Sablich engaged in prolonged talk about men's penises, offering to expose his own, and asking to see those of the class members, particularly those of the black employees, as according to Sablich they were known to be much bigger than the others'; on at least three occasions, Sablich dared the workers to ask him to expose his penis, and when they did not do so, took out his penis anyway; on several occasions, Sablich rubbed his genital area against Ashe's buttocks while Ashe worked; Sablich greeted Ashe by grabbing his own genitals and shouting that he had a "morning hard-on" for him; Sablich referred to Ashe's buttocks in particular as his "tunnel of love;" Sablich frequently recounted sexual adventures with other men, particularly those involving oral sex, and bragged about "unloading" sperm on men's backs and lips; on an almost daily basis, Sablich recounted stories about doing a "dick dance," an act in which Sablich, or Sablich and willing co-workers

4

and friends, would sometimes shake their exposed erect penises at, or against, each other, often while drunken at a local motel; several times, Sablich tried to get Ashe, Upchurch and other classmembers, to come with him and his friend to a local motel room for weekend sex, giving them directions and offering them money with which to buy beer to bring along; on one occasion, Sablich told Ashe that he could get him a driver's job at the plant and a raise to $15/hour if he would have oral sex with him; Sablich suggested to Upchurch that one way he could get ahead in the company was to perform sex on him; Sablich insinuated to the Dry Cell workers that the reason one of the workers in particular was always getting overtime was that the worker was submitting to his sexual advances; and Sablich referred to sexual submission to him as "playing by the rules" of the workplace;

  b.  subjecting Ashe, Upchurch, and a class of similarly situated African Americans working within and around the Dry Cell to a racially hostile and offensive work environment by condoning the racially harassing behavior of Sablich. Incidents of harassment committed by Sablich include, but are not limited to the following: on a frequent basis, Sablich drew attention to the Dry Cell black employees' race by saying they resembled various black professional athletes who played for Philadelphia teams and by inviting other workers to notice the purported resemblances; on a daily basis, Sablich referred to the Dry Cell black employees using pet names all involving some derivation of the metaphor of "chocolate," such as "Carmel Claude," "Armand Joy," "chocolate," "chocolate delicious," and (of Ashe and Upchurch collectively) "Twix;" during his almost-daily work place monologues on the theme of penises, Sablich often expressed his belief that the black employees' penises were larger than most males; referring to Sablish's unit as the "ghetto division;" telling Ashe and Upchurch that no one would believe "niggers" over the company's witnesses; and telling Ashe and Upchurch that they were lucky

even to be working at Cintas, given that "coloreds" were not even hired there until within the last twenty years;

c. subjecting Ashe and Upchurch to intimidation and threats in retaliation for their complaints about the sexually and racially hostile work environment. Such intimidation and threats included Sablich telling them that he was taking "no fucking shit" from them, that he had "more power in [his] pinky," than the two of them, that "you guys are finished" and would never get a job again, that nobody would believe "you niggers over" him and other management, and that Cintas' "army of lawyers" would "eat [their] lunch;"

d. unfairly disciplining Ashe and Upchurch by issuing them "Disciplinary Documentation" citations for minor or disputed infractions or which contained inaccurate underlying dates, in retaliation for their complaints about the sexually and racially hostile work environment; and

e. discharging Upchurch and Ashe on October 31, 2007 and April 25, 2008 respectively, in retaliation for their complaints about the sexually and racially hostile work environment.

14. The unlawful employment practices complained of in Paragraph 13 above were intentional.

15. The unlawful employment practices complained of in Paragraph 13 above were done with malice or with reckless indifference to the federally protected rights of Ashe, Upchurch and a class of similarly situated males and African Americans.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

  A. Grant a permanent injunction enjoining Defendants Cintas and Cintas Corporation No. 2, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them at the Warminster facility, from sexually harassing, racially harassing, and retaliating against their employees;

  B. Order Defendants Cintas and Cintas Corporation No. 2 to institute and carry out policies, practices, and programs which provide equal employment opportunities for African-Americans, males, and individuals who engage in protected activity, and which eradicate the effects of their past and present unlawful employment practices.

  C. Order Defendants Cintas and Cintas Corporation No. 2 to institute and carry out a standard reasonable and mandatory procedure for investigating the truth of workers' complaints concerning discriminatory behavior; and to train all levels of management authorized to investigate such complaints in the proper protocol for investigation, internal reporting, and recordkeeping with regard to such complaints.

  D. Order Defendants Cintas Corporation and Cintas Corporation No. 2 to make whole Armand Upchurch, Claude Ashe, and a class of similarly situated individuals employed in or around Defendant's Dry Cell unit of Cintas Fire Protection by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to front pay.

  E. Order Defendants Cintas Corporation and Cintas Corporation No. 2 to make whole Armand Upchurch, Claude Ashe, and a class of similarly situated individuals employed in or around Defendant's Dry Cell unit of Cintas Fire Protection by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in

paragraph 13, including retraining expenses, job search expenses, and medical expenses not covered by Defendants' employee benefit plan in amounts to be determined at trial.

F.   Order Defendants Cintas Corporation and Cintas Corporation No. 2 to make whole Armand Upchurch, Claude Ashe, and a class of similarly situated individuals employed in the Defendants' Dry Cell unit of Cintas Fire Protection by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraph 13, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

G.   Order Defendants Cintas Corporation and Cintas Corporation No. 2 to pay Armand Upchurch, Claude Ashe, and a class of similarly situated individuals employed in Defendants' Dry Cell unit of Cintas Fire Protection punitive damages for its malicious and reckless conduct described in paragraph 13 above, in amounts to be determined at trial.

H.   Grant such further relief as the Court deems necessary and proper in the public interest.

I.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DEBRA M. LAWRENCE
Regional Attorney (Acting)


MARIA SALACUSE
Supervisory Trial Attorney

_____
DAVID STAUDT
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
801 Market Street
Penthouse, Suite 1300
Philadelphia, PA 19107
Telephone:  (215) 440-2683
Facsimile:  (215) 440-2848